IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GARY HAMILTON,                    )
                                  )
        Plaintiff,                )
                                  )
            v.                    )      1:08cv1112 (JCC)
                                  )
TIMOTHY F. GEITHNER,              )
SECRETARY OF THE TREASURY,        )
                                  )
        Defendant.                )

### **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff's motion for reconsideration of the order transferring his case to this Court, Plaintiff's Rule 56(f) motion for an extension of time to conduct discovery, and Defendant's motion for summary judgment.  For the reasons stated below, the Court will deny Plaintiff's motion for reconsideration, deny Plaintiff's Rule 56(f) motion, and grant Defendant's motion for summary judgment.

### **I.  Background**

In July 2007, Plaintiff Gary Hamilton ("Plaintiff") filed this employment discrimination suit against Henry Paulson in his capacity as Secretary of the Treasury ("Defendant" or the

1

"Government").[1]  Plaintiff filed his complaint (the "Complaint") in the United States District Court for the District of Columbia.

A. Factual Background

Plaintiff, who represents himself in this matter, is an African-American man who was employed by the Internal Revenue Service (the "IRS" or the "Agency") as an Industrial Hygienist ("IH").  He applied in or about April 2005 for a different IH position at a higher pay grade than his then-current job.[2] Compl. ¶¶ 5, 7-8, 14.

The IRS did not select Plaintiff for the job. Plaintiff alleges that his application was ranked lower than those of other applicants due to his race.  Compl. ¶ 16.

1. Allegations in the Complaint

Around August 2005, Plaintiff filed a discrimination complaint against the IRS in the United States District Court for the District of Columbia.[3]  Compl. ¶ 6.  It was the fourth discrimination complaint that Plaintiff filed with the Agency

---

[1] The Secretary of the Treasury – the proper nominal defendant in this case – is now Timothy F. Geithner.  *See* Fed. R. Civ. P. 25(d); *see also* Gov't's Notice of Substitution [55].

[2] Plaintiff was a GS-12 IH at the time he applied for the new job, a GS-14 position.

[3] It is undisputed that Plaintiff exhausted his administrative remedies for the claims at issue here by initiating an EEO complaint.  The full investigation that followed found no evidence of discrimination.  *See* Gov't Ex. 1.

related to his non-selection for higher-paid positions.[4]  The
following month, the IRS announced a separate job opening for a
GS-14 Environmental Protection Specialist ("EPS").  Compl. ¶ 18.
Plaintiff claims that the IRS made it impossible for him to apply
for the position by "concealing" the vacancy from him.  Compl.
¶ 19.  When he did find out about the position and applied for
it, he claims, the IRS, motivated by racial animus, told him that
it would not accept his application and then closed the
announcement.  Compl. ¶¶ 20-22.  Plaintiff also alleges that IRS
personnel told him that it would be a waste of his time to apply
for positions within the agency.  Compl. ¶¶ 23-25.

       Plaintiff advances several theories for what he
believes was his "constructive discharge" from the IRS.  First,
he states that he felt forced to leave his job after it became
clear to him that he would not be promoted.  Compl. ¶ 26.
Second, he claims that IRS personnel "made his working conditions
so difficult or unpleasant" that a reasonable person "would have

---

[4] Plaintiff filed a complaint in October 2003 after a white female was
selected for a GS-14 position that he interviewed for; he filed another
complaint in April 2004 claiming discriminatory non-selection for a temporary
promotion.  In May 2005, Plaintiff filed a third complaint alleging, *inter
alia*, retaliation based on untrue statements made during investigations of his
prior complaints.  Gov't Ex. 1 at 3.  The first two complaints were
investigated and, in May 2005, a final agency decision found that no
discrimination had taken place in either case.  Gov't Ex. 1 at 3.  The third
EEO complaint was dismissed for failure to state a claim and for lack of
counseling.  Gov't Ex. 1 at 3.

felt compelled to resign."  Compl. ¶ 27.[5]  After Plaintiff left
the IRS, it filled the two GS-14 positions for which he had
applied or attempted to apply with non-African-American persons.

The Complaint contains four counts: racial
discrimination in violation of Title VII, based on Plaintiff's
non-selection for the GS-14 IH position (Count I); racial
discrimination in violation of Title VII, based on Plaintiff's
non-selection for the GS-14 EPS position (Count II); retaliation
for engaging in protected EEO activities (Count III); and
discriminatory constructive discharge (Count IV).

2. Undisputed Facts

Defendant moved for summary judgment on all four counts
on January 26, 2009.  While Plaintiff has asked for and was
granted several extensions of time to reply to the Government's
motion, he never submitted a formal response.  Instead, he filed
a Rule 56(f) motion and two separate affidavits in support.  The
undisputed evidence submitted by the Government shows that,
contrary to Plaintiff's allegations, he was considered by the IRS
for the IH position.[6]  He was not selected for the IH position

---

[5] Plaintiff also claims, in what should have been titled Count IV of his
Complaint, that he was constructively discharged because IRS personnel told
him "that he would be wasting his time to apply for any position" or otherwise
"[made] it clear to Plaintiff that no matter what he did he would not be
promoted."  Compl. ¶ 35.

[6] Plaintiff places significant emphasis on the IRS's statement that it
had not received his initial IH application. Compl. ¶¶ 8-10.  It is
undisputed, however, that the IRS ultimately received Plaintiff's IH
application in time to consider it.

because he did not have the highest-ranked application, not because of his race.  As discussed in more detail below, the Government's uncontested evidence shows that the IRS did not hide the EPS job opening from Plaintiff.  Plaintiff, in fact, had ample time to apply for the job, but simply failed to do so. Gov't Ex. 1 at 3-4.  Finally, Plaintiff did not leave his job with the IRS because of intolerable working conditions.  He left to pursue a job as a GS-13 – a higher pay grade than the one he held at the IRS – with the Occupational Safety and Health Administration ("OSHA").  Gov't Ex. 10 at 3-4.

   B. <u>Procedural Background</u>

      Plaintiff filed this case in the U.S. District Court for the District of Columbia in July 2007.  In October 2007, the Government moved to transfer it to this District.  Judge Walton granted the Government's motion, and the case was transferred to this Court on October 24, 2008.   The Government filed its motion for summary judgment, along with the requisite *Roseboro* notice, on January 26, 2009.  A hearing on the Government's motion was originally set for February 27, 2009.

      On January 28, 2009, Plaintiff moved for reconsideration of the decision to transfer his case.  Although he filed his motion with the U.S. District Court for the District of Columbia, it is properly before this Court.  *See* 1A Federal Procedure, L. Ed. § 1:896 (explaining that the transferring court

cannot reconsider its decision to transfer after the transfer takes place; instead, the party opposing transfer "must apply to the transferee court for retransfer").  The Government opposed Plaintiff's motion on February 2, 2009.

On February 4, 2009, Plaintiff moved for an extension of time to respond to the Government's motion for summary judgment.  Two days later, he asked for an extension of time to reply to the Government's opposition to his motion for reconsideration of the transfer order.  The Government did not oppose either motion.  The Court granted Plaintiff's requests and gave him until March 17, 2009 to file responsive briefs.  It reset the hearing date for both motions to April 4, 2009.

Plaintiff did not meet the March 17 deadline.  Claiming that he never received a copy of the Court's order, he asked for a further extension of time.  The Court, mindful of Plaintiff's *pro se* status, again indulged his request.  Over the objection of the Government, the Court gave Plaintiff until Friday, April 10, to submit responsive briefs.  It set a hearing on the motions for April 17, 2009.

On April 10, Plaintiff filed a Rule 56(f) request for a further extension of time "to complete discovery."  The Government opposed Plaintiff's request on April 14, 2009.  On April 16, just one day before the hearing, Plaintiff filed a reply brief in support of his Rule 56(f) motion.  He also

6

submitted a supplemental Rule 56(f) affidavit, which contained
new testimony about the alleged discrimination.  After the
hearing, the Court asked the Government to respond to the new
allegations raised in Plaintiff's reply brief and supplemental
affidavit.  (Order of Apr. 21, 2009.)  The Government submitted a
memorandum responsive to the Court's request on April 29, 2009.
On May 5, 2009, without seeking leave to do so, Plaintiff filed
an additional brief containing repetitive arguments he made in
earlier filings.

Defendant's motion for summary judgment, Plaintiff's
Rule 56(f) request, and Plaintiff's motion for reconsideration of
the transfer order are before the Court.

## II. Standard of Review

A. <u>Motion for Reconsideration</u>

Under Fed. R. Civ. P. 54(b), any order that
"adjudicates fewer than all the claims or the rights and
liabilities of fewer than all the parties . . . is subject to
revision at any time before the entry of judgment."  Fed. R. Civ.
P. 54(b).  Thus, "a district court retains the power to
reconsider and modify its interlocutory judgments."  *Am. Canoe
Ass'n v. Murphy Farms*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see
also Fayetteville Investors v. Commercial Builders, Inc.*, 936
F.2d 1462, 1469 (4th Cir. 1991).

7

The district court's reconsideration of an
interlocutory order is not subject to the heightened standards
that apply to reconsiderations of declaratory judgments.
*American Canoe*, 326 F.3d at 514.  Instead, the district judge may
exercise the discretion to afford relief from interlocutory
orders "as justice requires."  *Fayetteville Investors*, 936 F.2d
at 1473.  The discovery of substantially different evidence, a
subsequent change in the controlling applicable law, or the
clearly erroneous nature of an earlier ruling all justify
reconsideration.  *See American Canoe*, 326 F.3d at 515 (quoting
*Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir.
1988)).

   B. Rule 56(f) Request

        As a general rule, summary judgment is appropriate only
after "adequate time for discovery."  *Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986); *Temkin v. Frederick County Comm'rs*, 945
F.2d 716, 719 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095
(1992).  "[S]ummary judgment must be refused where the nonmoving
party has not had the opportunity to discover information that is
essential to his opposition." *Anderson*, 477 U.S. at 250 n.5.
Should it appear from the affidavits of a party opposing a
summary judgment motion that the party cannot, for reasons
stated, present by affidavit facts essential to justify the
party's opposition, the Court may refuse the application for

judgment, order a continuance, or make any such order as is just. Fed. R. Civ. P. 56(f).

The party opposing summary judgment bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). "Vague assertions" that more discovery is needed are insufficient. *Id.* Courts generally place great weight on a Rule 56(f) affidavit, believing that "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Nguyen*, 44 F.3d at 242); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) (stating that plaintiffs "genuinely concerned" that summary judgment was premature because of inadequate time for discovery should have sought relief under Rule 56(f)).

C. Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. &*

*Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).  A "mere scintilla" of evidence is insufficient to overcome summary judgment.  *Id.* at 248-52.  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

A. <u>Motion for Reconsideration</u>

As noted above, Plaintiff asked the United States District Court for the District of Columbia to reconsider its decision to transfer his case.  The motion to reconsider, though, is properly before this Court.  *See* 1A Fed. Proc., L. Ed. § 1:896.  The Government opposed Plaintiff's motion in early February 2009.  Plaintiff failed to submit a reply brief within the extended deadline that this Court granted him.  After reviewing the decision of Judge Walton and the papers submitted by the parties, the Court finds that Plaintiff's case was properly transferred to this District.  The Court will deny Plaintiff's motion for reconsideration.

First, the "law of the case" doctrine circumscribes a court's discretion when it reconsiders another district court's decision to transfer a case.  The Supreme Court has explained that, when reconsidering a court's motion to transfer, the transferee court should not overturn the decision "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous or would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Grp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1985)).  The transfer decision should not be reversed if the

transferee court "can find the transfer decision plausible." *Id.* at 819.

The District Court for the District of Columbia granted the Government's motion to transfer after finding that venue in the District of Columbia was improper under Title VII's venue provision. Mem. Op. of Oct. 10, 2008 ("Transfer Op.") at 3; *see* 42 U.S.C. § 2000e-5(f)(3). Title VII actions may be brought:

> [I]n any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practices are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(3). If a defendant cannot be found within one of the three above-listed districts, then an action may be brought "within the judicial district in which the respondent has his principal office." *Id.; see Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008); *see also Harding v. Williams Prop. Co.*, 1998 WL 637414, at *2 n.5 (4th Cir. Aug. 31, 1998) ("Venue of a Title VII action is therefore circumscribed by the very statute that gives . . . the right to sue in the first place. This specific circumscription overrides the general venue statute at 28 U.S.C. § 1391.") (internal quotation and citations omitted).

None of the three venue-selection criteria in Title VII make the District of Columbia a proper venue for Plaintiff's

12

action.  The "recommending official" for both positions that
Plaintiff sought worked at the IRS's office in Arlington,
Virginia during the relevant time period.  Transfer Op. 3-4.  The
IRS centralizes its other recruitment efforts at its Atlanta,
Georgia office.  Transfer Op. 4.  If Plaintiff had been selected
for either position, he would have worked in the IRS's Arlington
office.  Transfer Op. 4.  Finally, the alleged constructive
discharge could only have occurred in New Carrollton, Maryland,
where the Plaintiff was employed before leaving the IRS.
Transfer Op. 4.

        Thus, it is clear that venue was not proper in the
District of Columbia.  It is, however, proper in this Court.  The
employment discrimination allegedly occurred within the Eastern
District of Virginia, and Plaintiff would have worked within the
Eastern District but for the alleged discrimination.  The
transferring court was clearly correct in finding that venue was
proper here rather than in the District of Columbia.  It also
correctly rejected Plaintiff's argument for pendent venue based
on what Plaintiff claims is a related case pending in the
District of Columbia.  *See* Transfer Op. at 6-7; *see also Bartel
v. Fed. Aviation Admin.*, 617 F. Supp. 190, 198 n.33 (D.D.C. 1985)
("In enacting the special Title VII venue statute Congress
deliberately sought to limit the venues in which Title VII
actions might be brought.  Under such circumstances, the Court

13

lacks the authority to ignore the congressional intent to limit venue by finding pendent venue.").

Even without resort to the heightened deference due to the transferring court's decision under the "law of the case" doctrine, the transfer order was clearly correct; it was, in any event, more than "plausible." *Christianson*, 486 U.S. at 819. Plaintiff's motion for reconsideration will be denied.

B. Request for Extension of Time Pursuant to Rule 56(f)

Plaintiff, who has already sought and received two continuances of Defendant's motion for summary judgment from this Court, asked the Court – just seven days before the hearing on Defendant's motion – to delay its consideration of the summary judgment motion once again. For the reasons stated below, the Court will deny this request.

1. Governing Authority

Federal Rule of Civil Procedure 56 allows a party opposing summary judgment to request a continuance when the party believes that it would be improper for a court to grant summary judgment without the opportunity for additional discovery. Rule 56(f) states:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

14

Plaintiff followed the rule by filing a motion, supported by an affidavit, which states that he needs to conduct discovery before he can oppose the motion for summary judgment.

Rule 56(f), however, requires more than a conclusory allegation that additional discovery is necessary. The Rule 56(f) affidavit must specifically identify what evidence discovery will turn up and how that evidence will allow the party to oppose summary judgment. The affidavit should "particularly specif[y] legitimate needs for further discovery." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995); *see also Morrow v. Farrell*, 50 Fed. Appx. 179, 179 (4th Cir. 2002) (affirming a district court's denial of a Rule 56(f) motion where the movant "failed to identify any specific facts that he was yet to discover" and, instead, sought to use "generalized statements" to embark on a discovery "fishing expedition"). Denial of a Rule 56(f) motion is proper "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Community College*, 55 F.3d 943, 954 (4th Cir. 1995).

The Fourth Circuit has affirmed the denial of Rule 56(f) requests to delay the consideration of a summary judgment motion when the party seeking the delay "failed to identify any facts essential to his opposition that were not already available

15

to him," *Boyd v. Guiterrez* [sic], 214 Fed. Appx. 322, 322 (4th
Cir. 2007), or failed to identify the relevant information being
sought and to provide a basis for believing that such information
actually existed, *Richard v. Leavitt*, 235 Fed. Appx. 167, 167
(4th Cir. 2007).

       2. <u>Plaintiff's Affidavits</u>

       In his motion for an extension pursuant to Rule 56(f)
and his first supporting affidavit, Plaintiff claims that he
needs to depose "those individuals who participated or influenced
the facts surrounding the defendant's decision not to rate fairly
[sic] but for his race."   Rule 56(f) Mot. 1.   He makes a general
request to depose "the government eight defendants' declarative
employees [sic]."   Pl.'s First Aff. 4.   Specifically, he requests
the following: (1) the identity of all of Defendant's employees
"who left the agency within 2 years prior to and after
Plaintiff's constructive discharge," in order to "obtain
testimony with respect thereto"; (2) "discovery necessary to
demonstrate that Plaintiff was denied advancement opportunities
provided to Whites outside of Agency [sic]"; (3) the deposition
of John [Reagan] regarding "the discriminatory EEO record he
possessed" and the scheduling of a training program that
Plaintiff attended; (4) Defendant's "applicant-promotion flow
data" for 2004-2008; (5) information on documents "of great
probative value" relating to an e-mail "with protected EEO

16

information/activity" sent by Plaintiff; and (6) information on other recruitment actions announced by Defendant during the time period relevant to Plaintiff's case.  Pl.'s First Aff.

In his first affidavit, Plaintiff also states his own opinions about several Government employees, reiterates his theory of the case, and makes a number of statements about what he believes were the plans and schemes of Defendant's agents. None of these statements were properly included in the affidavit; the Court will not address them here.

Plaintiff's supplemental affidavit provides further details in support of Plaintiff's request to depose Messrs. Harriger and Reagan.[7]  Plaintiff testified that, after he called Harriger to tell him that he had been offered a GS-13 position at OSHA and indicated his desire to remain at the IRS if the Agency would award him one of the GS-14 positions he sought, Harriger told him that "'he did not understand why I wanted to work for the [IRS] given the past problems with prior EEO activity and the

---

[7] In the interest of dealing exhaustively with Plaintiff's claims in light of his *pro se* status, the Court addresses, below, the Government's motion for summary judgment on the merits as to each claim and does not, as the Government requested, grant summary judgment based solely on Plaintiff's failure to oppose the motion.  In explaining its ruling below, the Court takes into consideration the allegations in Plaintiff's last-minute filing of the supplemental Rule 56(f) affidavit.  Alternatively, however, the Court finds that the supplemental affidavit was filed late and could have been ignored in considering summary judgment.  Plaintiff submitted it after the twice-extended deadline given by the Court to oppose summary judgment.  Suspiciously, it contains new allegations not raised in the more than three years that have passed since the incidents occurred.  Considering the circumstances of this case, the Court finds, in the alternative, that the document should not be considered in deciding whether to grant summary judgment.

panel will not even rate you for an interview.'"   Pl.'s Supp.
Aff. 1-2.  He also claims that Reagan was somehow involved in
hiding the EPS position from Plaintiff because he had something
to do with an office safety audit that kept Plaintiff away from
his desk while the position was advertised.  (Pl.'s Supp. Aff.
2.)  Other parts of the supplemental affidavit contain
Plaintiff's opinions, musings, and legal arguments, none of which
belongs in an affidavit and none of which the Court will address.

     3. <u>Analysis</u>

     The alleged discrimination, retaliation, and
constructive discharge took place more than three years ago, and
nearly two years have elapsed since Plaintiff filed his lawsuit.
This Court has already provided Plaintiff with two generous
grants of additional time to reply to the Government's motion.  A
Rule 56(f) request at this late date – filed just days before the
hearing on the motion for summary judgment – strongly suggests a
stalling maneuver on the part of Plaintiff.  Because Plaintiff is
representing himself in this matter, however, the Court will
assume that he filed his motion and affidavits in good faith and
will analyze them as such.

     The request to forestall summary judgment will be
denied, because Plaintiff has not identified any new information
that he seeks through discovery that could create a genuine
dispute of material fact.  Additionally, what he has identified

as information that would interest him is either factually
unrelated to his legal claims or not identified with the
requisite specificity.  Even those requests that Plaintiff makes
in an intelligible and somewhat specific manner are broad,
"fishing expedition"-type discovery requests that have no place
in this straightforward employment discrimination case.

        In fact, Plaintiff has already had the benefit of an
exhaustive and independent EEO investigation into the allegations
in his Complaint.  That investigation included the extensive
production of documents and sworn statements.  In such a
situation, the Fourth Circuit's reasoning in *Boyd v. Guiterrez* is
particularly instructive: "[g]iven the extent to which numerous
documents and affidavits submitted during his EEOC proceedings
were already available to [the plaintiff]," the court explained,
it was not improper to deny the plaintiff's Rule 56(f) request.
214 Fed. Appx. at 323.

        Specifically, Plaintiff's request for the identity of
all Department of the Treasury or all IRS employees (he does not
specify which) who left the agency during the two years before
and the two years after Plaintiff's resignation, in order to
"obtain testimony" from them, is clearly an overly broad request
for information that has no bearing on the specific issues in
Plaintiff's case.  Nowhere does Plaintiff provide his reasons for
this request.  Plaintiff's second, generalized request for

"discovery necessary to demonstrate that Plaintiff was denied
advancement opportunities provided to whites" also fails to
justify a continuance.  The Court has no way to determine what
information Plaintiff seeks or the relevance of that information
to his claims.  Likewise, Plaintiff's generalized request for the
depositions of "at least seven . . . employees," which does not
name the employees or the specific information that Plaintiff
believes the depositions will provide, does not support his
motion.

Although Plaintiff names both Reagan and Harriger as
persons he is interested in deposing in his supplemental
affidavit, he asks for depositions on issues about which the men
have already provided sworn testimony or makes requests that are
unintelligible or that do not seek new information.  Harriger has
stated, under oath, that the first time he ever heard of
Plaintiff was after the two selections at issue had been made.
Gov't Ex. 9.  Plaintiff's supplemental affidavit directly
contradicts Harriger's claim that Harriger had not heard of
Plaintiff at the time he made the employment decisions at issue.
Pl.'s Supp. Aff. 1-2.  Thus, Plaintiff has raised a genuine
dispute of fact.

Plaintiff, however, did not identify any new
information that could be gained through discovery that is not
based on pure conjecture about Harriger's (or Reagan's) supposed

20

influence over other IRS employees, such as the rating panel –
members of which testified that they had no knowledge of
Plaintiff's past EEO activity and did not discuss any applicant's
race at the time they ranked candidates for the two GS-14
positions.  Gov't Exs. 13, 17.  The closest Plaintiff comes to
identifying the information he seeks is in his statement that he

> could only guess that Mr. Stuart Burns . . . and/or Regan
> [sic] had updated or informed [Harriger] of these EEO
> activities.  Albeit ---this is another genuine issue
> probative to my claims of retaliatory discrimination.
> This is why Mr. Reagan and Herringer [sic] need to be
> disposed [sic] to fetter out [sic] these facts.

Pl.'s Supp. Aff. 2.  Plaintiff presents nothing but suppositions
that, even if he were able to prove them, are not material.
Either Harriger knew about Plaintiff's EEO activity or he did
not; Plaintiff's guesses about how he could have formed such
knowledge are extraneous to that issue.  Additionally, because of
the way the IRS structures its selections process, the issue of
Harriger's knowledge of Plaintiff's prior EEO activity is not
material.  *See infra* III.C.1.

Plaintiff's request for the deposition of John Reagan
("Reagan"), an IRS official whom he appears to blame for most or
all of the discrimination he suffered, is not relevant to the
claims at issue.  It is undisputed that Reagan was not the
"selecting official" for the two positions to which Plaintiff
applied.  Gov't Exs. 1 at 4; 5 at 2.  Reagan was not on the
selection panel that rated Plaintiff as an applicant and created

a "short list" of potential hires.  Gov't Ex. 9.  Finally,

Defendant's evidence, including Reagan's testimony, clearly shows

that the scheduling of any training exercises for Defendant

occurred independently of the posting of the EPS job.  Gov't Exs.

9 at 2, 5; 2 at 3.  Defendant's speculation to the contrary does

not create a reason for further delaying this case so that

repetitive and needless discovery can be undertaken.

　　　Defendant has alleged that Reagan told him that,

because of his previous EEO activity, it would not be worth his

time to apply for higher-ranking jobs – an allegation that Reagan

denies.  Gov't Ex. 9 at 6.  But Reagan did not make the decision

not to hire Plaintiff.  That decision began with an independent

panel of three individuals that ranked the job applications

received by the IRS for the IH position.  The decision ended with

the selection of the two highest-ranking individuals on the

"short list" created by the independent panel.  Deposing Reagan

could not create a genuine issue of material fact, because no

action he could have taken, outside of directly influencing the

ranking committee, could have led to the non-selection of

Plaintiff.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*,

354 F.3d 277, 298-299 (4th Cir. 2004) (requiring a Title VII

plaintiff to show that the actual decisionmaker responsible for

the adverse employment decision had knowledge that the plaintiff

engaged in a protected activity).

Plaintiff has also suggested that he needs to depose the members of the ranking panel. *See* Pl.'s Rule 59(f) Reply 2. But, besides making unsupported allegations that Reagan may have influenced the members of the ranking panel in an undetermined manner, Plaintiff has not provided any information that would suggest that discovery would turn up any new information about the ranking panel, two members of which have already provided sworn affidavits in this case that contradict Plaintiff's baseless speculation. Gov't Exs. 13, 17.

Plaintiff also claims to need "access to Defendant's EEO applicant-promotion flow data" for 2004-2008. Agency-wide employment numbers could not raise an issue of material fact in this case, as Plaintiff has not raised a disparate impact claim.[8]

His request for information about other recruitment announcements made during the same period also does not provide a reason to further delay action on Defendant's summary judgment motion. Plaintiff appears to want this data in order to determine whether Government employees truthfully testified that the hiring for the two positions Plaintiff sought was delayed until December 2005 due to a hiring freeze.

The Complaint, however, does not allege that the *timing* of the hires had anything to do with discrimination. In other

---

[8] Additionally, Plaintiff cites the very figures he claims to "need[]" in a footnote to this request. Pl.'s First Aff. 10 n.4.

23

words, Plaintiff has not alleged that the hiring was pushed back into December in order to help IRS officials avoid considering Plaintiff's applications.  And any such allegation would be fruitless: Plaintiff did not apply to the EPS position, and he was not ranked highly enough even to be considered for the IH position.  There would have been no reason to delay the consideration of his applications.  Even so, Plaintiff has not suggested that he could not be considered for the IRS positions after leaving the Agency.  Additionally, the uncontroverted testimony of several individuals establishes that the timing of the job announcements and the hires had nothing to do with Plaintiff – and that, in fact, Plaintiff's decision to leave the IRS came as a surprise to at least one of his superiors.  Gov't Ex. 10 at 3.  Besides lacking specificity, Plaintiff's request would not produce meaningful information probative of any element of his claims beyond the information to which he already has access.

Finally, Plaintiff's request for unspecified documents related to an e-mail he sent in 2005 gives this Court no reason to delay action on the Government's motion.  *See* Pl.'s First Aff. 11; Def.'s Reply 13; Gov't Exs. 7, 20.  He personally sent the e-mail in question, and therefore has as much information about its contents as anyone else.  The e-mail simply does not, as he claims, contain "EEO information."  *See* Gov't Ex. 20.

Plaintiff's affidavit provides no intelligible clues about what he would gain from any discovery related to the e-mail or its recipients.

In his supplemental affidavit, Plaintiff claims to need information related to his placement off-site for an office safety audit by one Mr. Schiffer, which he claims prevented him from seeing the job posting for the EPS position.  Pl.'s Supp. Aff. 2.  This is a new discovery request.  Nothing in the Complaint implicates a Mr. Schiffer or suggests that Plaintiff was kept out of the office by a safety audit.[9]  Plaintiff's wild new allegations are too far-fetched and speculative to warrant a further delay in considering the Government's summary judgment motion.  Again, Plaintiff couches his request in speculative terms: some activity that he was supposed to perform off-site "[d]ramatically lessen[ed] Plaintiff [sic] chance of accessing his intranet to find out about the EPS opening."  Pl.'s Supp. Aff. 2.  He opines that, had he not been asked to perform a safety audit, it is "highly likely" that he would have seen the internal job posting.  Pl.'s Rule 56(f) Reply 5.

Plaintiff's attempt to construct an elaborate conspiracy theory whereby he was kept out of the office by a

---

[9] Paragraph 19 of Plaintiff's first Rule 59(f) affidavit does state that he wants to depose Reagan about the scheduling of a field safety program. This is yet another example of Plaintiff using his discovery requests as moving targets: like his recent revelation about Harriger's alleged statement, Plaintiff came forward with more information after the Government made its initial case for summary judgment.

number of IRS supervisors operating in concert so that he would not view a job listing does not amount to a legitimate reason to believe that there is actually new information Plaintiff would discover given the opportunity to take new depositions, especially after a full EEO investigation failed to turn up any such evidence.  Moreover, the timing of Plaintiff's fresh allegations, which are updated each time the Government points out a hole in his manifold theories of discrimination, casts serious doubt on whether any such information exists.

In summary, none of Plaintiff's requests supports the granting of his Rule 56(f) motion.  The material he claims to need would not, by itself, create "a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Community College*, 55 F.3d 943, 954 (4th Cir. 1995).  The affidavit does not "particularly specif[y]" any "legitimate need for further discovery." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).  The Court will not sanction the fishing expedition Plaintiff seeks to embark upon.  Nor will it further delay a case that has languished on the federal docket for nearly two years.  Plaintiff's Rule 56(f) request will be denied.

C. Summary Judgment

Plaintiff asserts four causes of action in his Complaint.  He claims that Defendant engaged in unlawful racial

discrimination when it did not select him for the GS-14 IH position; engaged in unlawful racial discrimination when it did not select him for the GS-14 EPS position; undertook both of these adverse employment decisions in retaliation for Plaintiff's prior EEO activities; and constructively discharged him.  All four claims are grounded in Title VII, which makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As explained in further detail below, there is no dispute over any material fact and Defendant is entitled to summary judgment on all counts.

    1. <u>Non-Selection for the Industrial Hygienist Position</u>

        a. <u>Relevant Facts</u>

        The evidence submitted by the Government, and undisputed by Plaintiff, shows that the IRS posted a vacancy for the GS-14 IH position both internally and externally on March 28, 2005.  Gov't Ex. 1 at 3.  Plaintiff's application was received and then ranked, along with the 19 other applications received by the IRS, by three subject matter experts.  Gov't Exs. 1 at 3, 4 at 2-3, 6, 13, 17.  The two members of the panel whose uncontradicted testimony is before the Court stated that they did

not discuss the applicants' race, gender, or age during the ranking process.  Gov't Exs. 13, 17.  They also did not discuss, or even know about, Plaintiff's prior EEO activity.  Gov't Exs. 13, 17.

The group then prepared a "certificate of eligibles," a "short list" of eligible applicants that is submitted to the selecting official ("Certificate").  Under Agency hiring rules, the Certificate rank-orders the eligible candidates by score, with some preferences made for military veterans.  Gov't Ex. 6 ¶ 6.  If scores are tied, a tie-breaking procedure determines the order in which the applicants appear on the Certificate.  Gov't Ex. 6 ¶ 7.  The Certificate contains enough names for the selecting official to consider at least three names for each vacancy.  Gov't Ex. 6 ¶ 7.  Crucially, the appointing official must make a selection for the first vacancy from the three eligible candidates ranked highest on the Certificate, with reference only to their merit and fitness for the position. Gov't Ex. 6 ¶ 7.  Once a selection is made from the first group of three candidates, the two applicants not selected and the candidate initially ranked fourth are considered to be the next "group of three" eligible for selection to the next position. Gov't Ex. 6 ¶ 7.

The structure of the IRS's hiring process is important to this case because most of the hiring discretion, such as it

is, belongs to the rating panel rather than to the appointing
official, whose discretion is limited to choosing among the
candidates ranked by the panel.  Thus, the actual decisionmaker
for the *non-selection of Plaintiff* was the rating panel, not
Harriger.  The rating panel was the entity that "in reality
ma[de] the decision" that Plaintiff would not be hired.  *Hill v.
Lockheed Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir.
2004).

   During the December selection for the IH position about
which Plaintiff complains, the Certificate comprised the seven
highest-ranked candidates.[10]  Plaintiff was not one of the seven
highest-listed candidates.  Gov't Exs. 4 at 2-3, 6.  Two
applicants – the two with the highest ranking who did not decline
the position – were selected by Harriger, the selecting official,
after Plaintiff left the IRS to take a higher-paying job at OSHA.

   Harriger stated under oath that he did not know
Plaintiff, Plaintiff's race, or anything about Plaintiff's prior
EEO activity.  Plaintiff, however, testified in an affidavit that
Harriger at one point told him that Harriger "did not understand
why [Plaintiff] wanted to work for the [IRS] given the past
problems with prior EEO activity and the panel will not rate you

_____

[10] In accordance with Agency hiring rules, the Certificate included
three names for each of the two open IH positions, plus one additional
candidate who was submitted because of a tie in scores.  *See* Gov't Ex. 6 ¶ 10.

even for an interview."  Pl.'s Supp. Aff. 1-2.  At no point,
however, was Plaintiff's application considered by Harriger.
Because Plaintiff did not appear on the ranking panel's
preparation of the Certificate, which was based only on the
adjusted scores of the applicants, Harriger could not have
selected Plaintiff for the position.

     b. <u>Governing Law</u>

     To avert summary judgment in a Title VII employment
discrimination case, a plaintiff must either (1) present direct
or compelling circumstantial evidence that discrimination
motivated the employment decision at issue, or (2) raise an
inference of discrimination through the two-step "pretext"
framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.
792 (1973).  *See, e.g.*, *Hill v. Lockheed Martin Logistics Mgmt.,
Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

     Here, the only potentially direct evidence of
discrimination submitted by Plaintiff consists of his claims that
Reagan told him that it would be a "waste of [his] time to apply
for the industrial hygienist or any position because of [his]
prior EEO activities" and that Harriger told him that he did not
know why Plaintiff wanted to continue to work for the IRS given
his "past problems with EEO activity" and that the panel would
not rate him for an interview.  Pl.'s First Aff. 9; Pl.'s Supp.
Aff. 2-3.  Reagan denies saying any such thing, *see* Gov't Ex. 9

30

at 6, and Harriger claims that he did not even know Hamilton at
the time the selections were made, *see* Gov't Ex. 5 at 2-3.
Harriger has not yet had a chance to rebut Plaintiff's recent
recollection of a conversation the two men had in November 2005,
which Plaintiff did not reveal until the eve of the hearing on
this motion.

What Reagan and Harriger did or did not say may present
genuine disputes of fact.  They do not, however, present genuine
disputes of *material* fact. First, Reagan did not make either
hiring decision at issue.  Crucially, no evidence suggests that
he had any influence on the panel that conducted an independent
ranking of all applicants to the IH position.  Even if Plaintiff
correctly recounted Reagan's potentially discriminatory
statement, that alleged statement had no bearing on the conduct
of which Plaintiff complains – his non-selection for the IH
position.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354
F.3d 277, 298-299 (4th Cir. 2004) (requiring a Title VII
plaintiff to show that the actual decisionmaker responsible for
the adverse employment decision had knowledge that the plaintiff
engaged in a protected activity).

Likewise, Harriger's alleged statement cannot show that
discrimination motivated the employment decision at issue.  Even
if Harriger was improperly motivated to not select Plaintiff, the
structure of the hiring process and the IRS's use of an

independent ranking panel took away any such opportunity.  And
Harriger's alleged statement that "the panel will not rate
[Plaintiff] even for an interview" does not show that the panel
was improperly influenced.  The statement, in context, appears to
be a prediction rather than a threat, and in Plaintiff's
transcription it does not appear to be directly connected to
Harriger's supposed knowledge of Plaintiff's prior EEO activity.

Even if Plaintiff's recollection potentially can be
read to imply some improper influence over the rating panel, it
falls far short of requiring a trial of the facts.  The merest
suggestion or inference of a possibly wrongful influence, in the
face of (1) contradictory testimony from Harriger about whether
such a statement was ever made in the first place, and (2)
separate, uncontradicted affidavits from ranking panel members
explaining that the panel did not know anything about Plaintiff's
prior EEO complaints before ranking him and did not discuss race,
age, gender, or any other irrelevant characteristics during the
ranking process, can be treated as no more than a scintilla of
evidence in Plaintiff's favor.  Considering the evidence, a
reasonable jury could not find that Harriger's statement
constitutes direct evidence of unlawful discrimination.

Thus, to avert summary judgment, Plaintiff must proceed
under the *McDonnell Douglas* framework: he bears both the ultimate
burden of persuasion and the initial burden of establishing, by a

preponderance of the evidence, a prima facie case of unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

If the plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Holland*, 487 F.3d at 214. This burden is one of production rather than of persuasion. *Id.* If the employer produces sufficient evidence to support a nondiscriminatory explanation for the employment decision, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In a non-selection case such as this, a plaintiff can establish a prima facie case by submitting admissible evidence that: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *See Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004). To show that the employer's proffered non-discriminatory reason for non-selection is pretextual, the Fourth Circuit has required a

33

plaintiff to establish that he was the better-qualified candidate for the position or to put on sufficient evidence to "undermine the credibility of the employer's stated reasons" for the plaintiff's non-selection.  *See Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 259 (4th Cir. 2006); *see also Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985).

### c. Prima Facie Case of Discrimination

Plaintiff cannot make a prima facie case of discrimination.  He cannot meet the fourth element of the prima facie test, because he cannot demonstrate that he was not selected for the IH job under circumstances that give rise to an inference of unlawful discrimination.  *See Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004).  The undisputed evidence shows that his application was received and considered by an independent panel that ranked other candidates more highly.  The panel forwarded a list of the seven highest-ranking candidates, which did not include Plaintiff, for further consideration. Harriger was required to choose a candidate for each open position from the top three ranked individuals in the Certificate.  Even if, given the opportunity, he would not have selected Plaintiff for unlawful reasons, Harriger was bound by Agency hiring rules to select individuals other than Plaintiff for the open jobs.  In the end, the two highest-ranking candidates who wanted the job were selected.  Thus, for reasons

having nothing to do with his race, Plaintiff was never considered for the position by Harriger.

Additionally, even if Reagan, who Plaintiff claims was motivated by unlawful discrimination, supported the hiring of one or more of the candidates recommended by the independent panel, Plaintiff has submitted no evidence showing that Reagan had anything to do with the treatment of his application or with the fact that he was not ranked as highly as the candidates who were forwarded to Harriger for further consideration. Thus, Plaintiff can point to no evidence whatsoever suggesting that the decision not to hire Plaintiff for the IH position was made under circumstances that give rise to an inference of unlawful discrimination.

d. <u>Rebuttal of Defendant's Reason as Pretextual</u>

Even if Plaintiff could establish a prima facie case, Defendant has submitted a legitimate, nondiscriminatory reason for its non-selection of Plaintiff: Plaintiff's comparatively low ranking. Plaintiff's converted Office of Personnel Management ranking score was 96. Seven other individuals scored from 99 to 102. The lowest score passed on for further consideration by Harriger scored a 99. *See* Gov't Exs. 4, 6. Plaintiff's raw speculation that he was not chosen because of his race is insufficient to show that Defendant's stated reason for not selecting him was pretextual. *See Williams v. Cerberonics*, 871

F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of
discrimination in and of themselves are insufficient to counter
substantial evidence of legitimate nondiscriminatory reasons for
an adverse employment action.").  There is no genuine dispute
about the facts underlying Defendant's employment decision.
Plaintiff cannot make any showing of pretext or of direct
discrimination related to the hiring decision.  His claim must
fail.

> 2. <u>Non-Selection for the Environmental Protection</u>
>    <u>Specialist Position</u>

Plaintiff alleges that the announcement of the EPS
position was timed to intentionally deprive him of the
opportunity to apply for it.

> a. <u>Relevant Facts</u>

The IRS posted an internal announcement for the EPS
job on July 18, 2005, with a closing date of August 1, 2005.
Gov't Ex. 1 at 3.  Plaintiff had a pre-scheduled "Front Line
Readiness Program" ("FLRP") conference that required out-of-town
travel during part of that period.  The FLRP is a program
designed to prepare IRS employees to become managers.  FLRP
conferences are scheduled weeks in advance.  Gov't Ex. 2 at 3.
Managers at the IRS have no control over the period of time for
which job vacancies are announced.  Gov't Ex. 2 at 2-3.

Plaintiff left for the FLRP conference on July 24, 2005
– almost one week after the job vacancy was posted.  Reagan, who
made the decision to announce the open position, had no ability
to influence Plaintiff's work assignments and had no knowledge of
Plaintiff's day-to-day schedule.  Gov't Ex. 9 at 5.  As Harriger
explained, "When we had permission to announce the position, we
announced it. . . . When you get an opportunity to announce a
position, you get it out there as quickly as possible."  Gov't
Ex. 5 at 2.  Another agency official stated in a sworn
declaration that "announcements are developed, reviewed, written
and submitted and go into a till.  When everything is approved
and authorized, it is announced."  Gov't Ex. 2 at 3 (Decl. of
Chadwick Pickeral).

The Complaint claims that Defendant deprived Plaintiff
of the opportunity to apply for the EPS position and also
rejected Plaintiff's application.  Plaintiff, however, has
pointed to no evidence countering Defendant's showing that he
never applied to the position.  He does not contest the fact that
he did not apply for the job in the affidavit submitted in
support of his Rule 56(f) request.  In fact, no one applied for
the position during the period from July 18 to August 1.  The job
was then posted externally on September 6, 2005, with a closing
date of September 13, 2005.  Plaintiff does not now contest the

fact that he did not apply during the September open period, either.

b. <u>Prima Facie Case</u>

The undisputed facts show that the timing of the EPS vacancy announcement had nothing to do with Plaintiff.  If some nefarious plot was hatched to keep Plaintiff in the dark about an open GS-14 position, it was not a terribly effective one. Plaintiff had almost a full week in July, and had an additional full week in September, to apply for the position.  He simply failed to do so.  Thus, his non-selection for the job cannot constitute an adverse employment action, and Plaintiff's cause of action for employment discrimination related to the EPS position fails as a matter of law.  *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (holding that a Title VII claim requires "the existence of some adverse employment action").

Plaintiff's late recollection of another angle to the conspiracy that he imagines kept him from the job – namely, that during the first week that the position was open in July, he was intentionally kept away from his desk by another individual so that he could not view the job announcement – is not supported by anything in the extensive EEO investigation or by any other evidence in the record.  *See* Pl.'s Supp. Aff. 2-3.  Plaintiff's questionably-timed recollections of what he believes to be

further aspects of a conspiracy to keep him away from his computer so that he would not notice a job opening would not suffice to allow a jury to find that he has made out a prima facie case of any discriminatory action.

Additionally, Plaintiff's allegation that a job listing e-mail normally sent out to IRS employees in addition to the official job posting was strategically withheld also fails for a complete lack of evidence. Chadwick Pickeral testified that e-mail notices of open positions were sometimes sent out, but that it was not a "normal practice" to do so. Gov't Ex. 2 at 3. John Reagan testified that the process of sending out any such announcements is controlled by a staff assistant, not by him. Gov't Ex. 9 at 6. Even if such announcements were routinely sent out, but were not sent out for the EPS position, Plaintiff still cannot show that the lapse was part of a conspiracy against him. Again, such a conspiracy would have had to involve a number of IRS officials working covertly to keep one of their employees from seeing a job posting announced to the entire IRS, and then announced a second time several months later. Plaintiff can point to no evidence in the extensive EEO investigation conducted for his case that would support such an incredible series of events.

Notably, Plaintiff does not claim that he was kept away from his office and thus impeded from checking the available open

positions for the entire time during which the position was open. There is no evidence whatsoever that the announcements were timed in a manner designed to keep Plaintiff from applying.  Lastly, Plaintiff failed to apply when the position was opened up again in September 2005.  Plaintiff's version of the events, built entirely on his own inferences and rebutted by the extensive evidence gathered during the EEO investigation, is one that no reasonable jury could accept.

### c. Rebuttal of Defendant's Reason as Pretextual

Even if Plaintiff could make out a prima facie case of discrimination, Defendant has come forward with a legitimate and non-discriminatory reason for not hiring Plaintiff: Plaintiff never applied for the position.  When a plaintiff has not applied for a position and was not prevented by his employer from applying, no adverse employment action took place and a Title VII claim must fail. *Berez v. Prudential Ins. Co.*, 1993 WL 104670 (4th Cir. 1993).  Plaintiff can point to no evidence from which a jury could surmise that Defendant's reason for not hiring him was a pretext for discrimination.  There are no material facts in dispute and, as discussed above, Plaintiff's requests for more discovery on this issue have been denied.  The Court will grant Defendant's motion for summary judgment on the EPS discriminatory hiring charge.

3. <u>Constructive Discharge</u>

Plaintiff claims that Reagan's statement that he would be wasting his time by applying for a promotion, and "defendant or its agents[']" inferences that Plaintiff would not be promoted "no matter what he did," constructively discharged Plaintiff from his job with the IRS.

a. <u>Applicable Law</u>

An employee's reasonable decision to resign because of unendurable working conditions can be considered a formal discharge. *See Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). The constructive discharge inquiry is an objective one: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id.* (citation omitted).

To prove constructive discharge, a plaintiff must show that the employer's actions were deliberate and that working conditions were objectively intolerable. *Heiko*, 434 F.3d at 262 (citation omitted). An employer's actions are "deliberate" only if they were intended to force the employee to quit. *Id.* (citation omitted). The objective inquiry asks whether a reasonable person would find the conditions described to be intolerable. *Id.* "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a

41

reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (citation omitted).

Finally, the "denial of a single promotional opportunity is insufficient to create an intolerable working environment." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 237-38 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). After establishing constructive discharge, a plaintiff bears the burden of showing that the complained-of conduct was motivated by unlawful discrimination. *See id.*

b. <u>Analysis</u>

Plaintiff falls far short of alleging the kind of objectively intolerable working conditions that could lead to a constructive discharge. First, as explained above, uncontroverted evidence shows that none of the employment actions that he complains of was motivated by discrimination. Second, the evidence shows that Plaintiff left the IRS voluntarily, before either the IH or the EPS position was filled, in order to take a higher-paying GS-13 position with OSHA.

Even if Reagan did tell Plaintiff that it would be a waste of time for him to apply to other positions because of his prior EEO activity, *see* Pl.'s First Aff. at 9, Plaintiff clearly left of his own accord to take a higher-paying job; his departure came as a surprise even to one of his superiors. *See* Gov't Ex. 2

42

at 4.  Plaintiff told his supervisor that his new position constituted a promotion and that he was excited about it.  Gov't Ex. 10 at 4.  He simply left for greener pastures.

Additionally, a reasonable jury could not find that Reagan's alleged statement made the conditions under which Plaintiff labored objectively intolerable.  That statement falls far short of what other courts have deemed *insufficient* to show constructive discharge.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (ruling that a plaintiff's allegations were insufficient to support a constructive discharge claim even though the plaintiff claimed that her supervisors yelled at her, gave her poor evaluations, told her she was incompetent, and insisted that she work with an injury).

Harriger's alleged statement that he did not understand why Plaintiff would want to continue working at the IRS given all of the EEO complaints he had filed and that he did not believe that the rankings panel would rate Plaintiff highly enough for him to get an interview are also insufficient to allow a jury to find "constructive discharge," for the same reasons.  An expression of surprise that an individual would want to continue working at an agency where he felt he had been discriminated against on numerous prior occasions, and a statement about an individual's chance of a promotion, cannot possibly create the kind of objectively intolerable working conditions that lead to

43

constructive discharge.  Even if Plaintiff understood Harriger to
be saying that he would not give him one of the open GS-14
positions, that understanding could not, given the circumstances
of this case, underpin a claim for constructive discharge.
Nothing in the record suggests that Plaintiff found his job so
intolerable that he would not have stayed with it had he not been
offered a promotion by another government agency.  Plaintiff did
not leave the IRS during any of his other EEO-investigated
allegations of improper denials of promotions.

In fact, Plaintiff had been seeking a new job for some
time prior to his resignation; he left the IRS only when a new
job that he wanted became available.  Nothing but Plaintiff's own
self-serving statements suggest that he quit the IRS because of
the "intolerable" working conditions there.  "If the evidence
shows that the plaintiff . . . quit for a reason other than his
working conditions, then logically the plaintiff was not
constructively discharged."  *Strickland v. Jewell*, 562 F. Supp.
2d 661, 674 (M.D.N.C. 2007).  No reasonable jury could find that
the IRS constructively discharged Plaintiff.

4. Retaliation

a. Applicable Law

Courts analyze retaliation claims using a burden-
shifting analysis similar to that described above.  To establish
a prima facie case of unlawful retaliation, a plaintiff must show

44

that: (1) he engaged in a protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998). A "materially adverse" action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted).

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer, which must articulate a legitimate, nondiscriminatory reason for the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001) (citation omitted). If the employer can produce a legitimate, non-retaliatory reason for the employment action, the burden shifts back to the plaintiff to produce evidence that the given reason is a pretext for retaliation. *Id.*

b. Analysis

Here, Plaintiff cannot establish a prima facie case of retaliation. Even assuming that Plaintiff's non-selection for the IH or EPS position was an "adverse employment action," there is no causal connection between those actions and Plaintiff's prior EEO activity. As explained above, the panel that ranked applications for the IH application did not know about

45

Plaintiff's prior EEO activity and did not factor any candidate's prior EEO activity into its decisions.

As for the EPS position, nothing about Plaintiff, his race, or his prior EEO activity had any bearing on the timing of the IRS's decision to post the job announcement and, in any event, Plaintiff was not deprived of an opportunity to apply for the job.  He simply did not do so.  Finally, for the reasons explained above, Plaintiff's decision to leave the company was voluntary, not a "constructive discharge."  The Court will grant Defendant's motion for summary judgment on the retaliation claim as well as on Defendant's other three claims.  No material facts are in dispute, and a reasonable jury could not find for Defendant on any of his claims.

## IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's motion for reconsideration, deny Plaintiff's Rule 56(f) request for an extension of time, and grant Defendant's motion for summary judgment.

An appropriate Order will issue.


June 15, 2009
Alexandria, Virginia
                              /s/
                         James C. Cacheris
                  UNITED STATES DISTRICT COURT JUDGE